# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RONALDO FLORES, *et al.* | * | |
|     Plaintiffs, | * | |
| v. | * | Civil Action No. 8:18-cv-03312-PX |
| HMS HOST CORP., *et al.* | * | |
|     Defendants, | * | |
|     *and*, | * | |
| AMY STORCH, *et al.* | * | |
|     Plaintiffs, | * | |
| v. | * | Civil Action No. 8:18-cv-03322-PX |
| HMS HOST CORP., *et al.* | * | |
|     Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Pending before the Court in these companion FLSA class cases are Defendants' motions to dismiss in *Flores v. HMS Host Corp.*, No 8:18-cv-03312-PX, ECF No. 15, and *Storch v. HMS Host Corp.*, No. 8:18-cv-03322-PX, ECF No. 14. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' motions are DENIED.

### I.  Background

These cases are related to *Acey v. HMS Host USA, Inc.*, No. 8:18-cv-01395-PX, also pending before this Court. *Acey* involves a Fair Labor Standards Act ("FLSA") suit also against Defendants HMS Host Corporation and HMS Host USA, Inc. (collectively "HMS Host," "HMS," or "Defendants"). *Acey*, ECF No. 115 at 1. HMS Host owns and operates food and

beverage franchises across the United States, mostly in large airports. *Id.* The *Acey* Plaintiffs are employees of HMS Host and allege that their employer systematically under-compensated them in violation of the FLSA. *Id.* at 1–2.

*Acey* had been filed originally in the Western District of Tennessee. *Id.* at 2. At the time *Acey* was transferred to this District, the Plaintiffs represented that they would pursue claims on behalf of three groups of employees: (1) untipped "Quick Service Restaurant" ("QSR") employees; (2) untipped "warehouse runner/receiver/utility" ("runner") employees; and (3) tipped waitstaff. *Id.* at 3. The *Acey* Plaintiffs initially intended to amend the Complaint to reflect the three distinct subclasses. *Id.* at 3. Instead, in September 2018, the *Acey* Plaintiffs narrowed their Complaint so that it only alleged claims on behalf of QSR employees. *See Acey,* ECF No. 96 at ¶ 4. The "runner" employees then filed *Flores*, ECF No. 1, and the waitstaff filed *Storch*, ECF No. 1.

The Court has already denied Defendants' motion to dismiss the *Acey* Complaint. *Acey*, ECF No. 115. The Court now turns to similar, but not identical, challenges that HMS lodges against the *Flores* and *Storch* Complaints.

The allegation unifying all three cases is that HMS Host used a coordinated scheme to under-compensate its employees. *Acey*, ECF No. 1 at ¶ 14; *Flores*, ECF No. 1 at ¶ 15; *Storch*, ECF No. 1 at ¶ 15. The precise theories vary slightly from case to case. But, at bottom, each Complaint accuses HMS Host of "strictly enforc[ing]" a set of "labor budgets" that were out of line with the operational demands of its establishments. *Acey*, ECF No. 1 at ¶ 14; *Flores*, ECF No. 1 at ¶ 15; *Storch*, ECF No. 1 at ¶ 15. Then, to meet these unrealistic labor budgets, management extracted unpaid and underpaid labor from its employees. *Acey*, ECF No. 1 at ¶ 14; *Flores*, ECF No. 1 at ¶ 15; *Storch*, ECF No. 1 at ¶ 15.

The runner employees bring one claim for overtime wages through named Plaintiff Ronaldo Flores, asserting that HMS Host failed to pay any wages for Plaintiffs' "off-the-clock" work. *Flores*, ECF No. 1 at ¶¶ 44–51. Flores maintains that he "routinely" worked eight to ten hours in excess of a forty-hour work week but was not properly compensated for that time. *Id.* at ¶ 25. Flores worked off-the-clock before his shift started, during breaks, and after scheduled shifts. *Id.* at ¶ 28. This work consisted of opening the warehouse in the morning, cleaning, making various deliveries, and swapping CO2 tanks and kegs. *Id.* Flores alleges that management ignored his complaints and threatened disciplinary action if he refused to work off-the-clock. *Id.* at ¶¶ 30–31.

The waitstaff employees, through named plaintiffs Amy Storch, Samantha Curry and Jenna Plotkin (collectively "Storch"), allege that HMS Host required the waitstaff to work one to three off-the-clock hours per shift, performing such tasks as cutting fruit, cleaning and sweeping, and preparing place settings. *Storch*, ECF No. 1 at ¶ 22. The Storch plaintiffs further allege that Defendants improperly deprived them of a minimum wage for "related, non-tip producing" duties. *Id.* at ¶ 41. On this claim, Storch puts forward a host of tasks that Defendants required her to perform that did not earn her tips.[1] *Id.* at ¶¶ 23, 41. Storch specifically notes that these tasks took up more than 20% of her time, but that she received a "tip credit wage" instead of the regular minimum wage. *Id.*

HMS Host now moves to dismiss the entirety of Flores and Storch's complaints. *Flores*, ECF No. 15; *Storch*, ECF No. 14. Much as they did in *Acey*, HMS Host argues that Plaintiffs

---

[1] The Complaint specifically describes the untipped duties to include refilling sugar caddies, salt and pepper shakers, ice, and condiments; cleaning chairs, tables, and booths; performing pre-closing cleaning tasks such as vacuuming and sweeping the server's assigned area; checking dishes, napkins, and utensils; cleaning the bar; wiping down bottles; restocking beer; cleaning taps; cleaning bar area tables; and washing bar glasses. *Storch*, ECF No. 1 at ¶ 41.

have averred boilerplate FLSA violations that cannot survive challenge. *Flores*, ECF No. 15-1 at 8–17; *Storch*, ECF No. 14-1 at 9–11, 14–16. Additionally, with respect to the *Storch* Complaint, HMS Host contends that a recent 2018 Department of Labor ("DOL") opinion letter forecloses Storch's "related duties" claim by reinterpreting a pivotal regulation. *Storch*, ECF No. 14-1 at 11–13, 16–17. The Court addresses each contention in turn.

## II. Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

## III. Discussion

### A. Motion to Dismiss the *Flores* and *Storch* Complaints on Sufficiency Grounds

The Court first turns to the motions to dismiss Plaintiffs' "off-the-clock" claims. HMS Host asserts that under *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017), both Complaints fail to plead sufficient facts to support their claims. HMS Host particularly stresses that Plaintiffs failed to include sufficient details about unnamed, opt-in plaintiffs, and point to *Ramnarine v. Rainbow Child Development Center, Inc.*, No 8:17-cv-2261-RWT, 2018 WL 1243546 (D. Md. Mar. 9, 2018) for support.

For the Court, these arguments are deja vu all over again. Almost verbatim, HMS Host

reasserts the arguments that this Court rejected in *Acey*. *Compare Acey*, ECF No. 104-1 at 9–11 *with Storch*, ECF No. 14-1 at 9–11 *and Flores*, ECF No. at 8–10. The Court views the Storch and Flores Complaints as sufficient when considering that *Hall* simply requires this Court to determine whether the factual allegations "support a reasonable inference that [Plaintiffs] worked more than forty hours in a given week." *Hall*, 846 F.3d at 777 (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013)). Further, the Court maintains that *Ramnarine* is of limited utility in that it only commands dismissal where the Complaint fails to allege any factual context about a plaintiff's specific overtime work. *See Acey*, ECF No. 115 at 6–7 (discussing *Ramnarine*, 2018 WL 1243546, at *3). That is not these cases.

As in *Acey*, both the *Flores* and *Storch* Complaints assert that HMS Host maintained a centralized policy of requiring its employees to work off-the-clock. Each Complaint further details the nature and type of off-the-clock work performed. Given that the *Flores* and *Storch* Complaints describe a systematic denial of wage compensation with the goal of maintaining preordained labor budgets, this Court may plausibly infer that each class of Plaintiffs had "worked more than forty hours in a given week." *Hall*, 846 F.3d at 777. Thus, for the same reasons the Court stated in *Acey*, both Complaints are sufficient to state a claim.[2]

To rebut the factual allegations in *Flores*, HMS Host attaches several time sheets purporting to show Flores as having received overtime pay and having worked fewer than 40 hours per week. *See Flores*, ECF No. 15-1 at 14–15. HMS Host argues the records disprove Flores's allegations. *Id.* The Court rejected a similar argument in *Acey* and again rejects it here. *See Acey*, ECF No. 115 at 7–8. On a motion to dismiss for failure to state a claim, Courts may not consider materials outside the complaint unless they are "integral" to the complaint and the

---

[2] The Court similarly rejects HMS Host's argument for striking class claims as it did in *Acey*. *See Acey*, ECF No. 115 at 5–6.

plaintiff does not contest their authenticity. *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). These documents meet neither requirement. Flores vigorously contests the accuracy and reliability of these timesheets. *Flores*, ECF No. 17 at 11. And the documents are not "integral" to the Complaint in that Plaintiffs allege HMS Host engaged in systemic underpayment that would not be reflected in HMS Host employment records. *See Chesapeake Bay Found., Inc v. Severstal Sparrows Point, LLC*, 794 F Supp. 2d 602, 611 (D. Md. 2011). Indeed, the Complaint concerns *off-the-clock work* which, by definition, is not captured in time sheets.

In short, HMS Host repeats the same arguments it made *Acey*, and the Court again finds them unpersuasive. The Court denies Defendants' motion to dismiss Flores and Storch's off-the-clock claims.

### B. Storch's "Related Duties" Claims in light of the 2018 DOL Letter

In contrast to HMS's sufficiency arguments, the challenge to *Storch*'s related duties claim requires the Court to cover new ground. The *Storch* Complaint singularly challenges HMS' refusal to pay a minimum wage for employee hours spent performing duties "tangentially related" to their tip-producing work. *Storch*, ECF 1 at ¶ 23. HMS contends that a 2018 DOL Letter forecloses this claim. *Id.*, ECF No. 14-1 at 16–17; ECF No. 17 at 4–9. Because this Court cannot credit the 2018 DOL Letter as a valid interpretation of the applicable DOL regulation, the Court rejects HMS's contention.

To place this dispute in proper context requires review of the FLSA and its regulatory underpinnings. The FLSA mandates that employers pay hourly workers a standard minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). Employers may pay a significantly reduced minimum wage of $2.13 per hour for tipped employees such as waiters or sky caps. 29 U.S.C. §

203(m); *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 447 (4th Cir. 2015). Known as the "tip credit," the FLSA permits, effectively, an employee's hourly wage to be subsidized through tipped compensation. *See Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011).

A tipped employee is defined as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). However, the FLSA is silent as to how the tip credit applies where an employee performs both tipped and untipped work. To fill in this statutory gap, the DOL in 1967 promulgated 29 C.F.R. section 531.56(e) as guidance. This regulation reads:

> In some situations[,] an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man.

29 C.F.R. § 531.56(e). The DOL thus clarified that where the employee maintains dual job duties, the employer must pay the employee a standard minimum wage for those duties which the employee does not receive tips. *See id.*; *Barnhart v. Chesapeake Bay Seafood House Assocs., L.L.C.*, No. JFM-16-01277, 2017 WL 1196580, at *4 (D. Md. Mar. 31, 2017).

The regulation also went on to explain that simply because a tipped employee takes on other duties does not necessarily mean the tipped employee maintains a "dual job":

> [A dual job] is distinguishable from . . . a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

7

29 C.F.R. § 531.56(e). Where an employee performs "related duties," the employer need not pay the standard minimum wage, and instead may take the tip credit, so long as the employee performs such related duties only "occasionally" or "part of [the] time." *Id.*; *see also Fast v. Applebee's Int'l, Inc.*, 628 F.3d 872, 879–80 (8th Cir. 2011) *cert. denied* 565 U.S. 1156 (2012). The regulation, however, does not explain what is meant by "occasionally" or "part of [the] time." *See Fast*, 628 F.3d at 879; *Barnhart*, 2017 WL 1196580, at *5.

In 1988, the DOL provided further guidance in its "Field Operation Handbook." *See* U.S. Dep't of Labor, Wage & Hour Div., Field Operations Handbook § 30d00(e) (Dec. 9, 1988)). There, the DOL announced a bright line for determining whether non-tipped related duties were performed more than "occasionally." The Handbook made clear that if an employee spent "a substantial amount of time (*in excess of 20 percent*)" on untipped work, "no tip credit may be taken for the time spent in such duties." *See id.* (emphasis added). Since the Handbook's publication, courts have routinely determined that where a tipped employee spends more than 20% of her time performing related duties, the employer cannot avail itself of the tip credit and must instead pay the employee the regular minimum wage for the time spent on "related duties." *See, e.g.*, *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 628–29, 633 (9th Cir. 2018) (en banc); *Fast*, 638 F.3d at 880–81; *Driver v. AppleIllinois,* LLC, 739 F.3d 1073, 1076 (7th Cir. 2014).

This regulatory framework remained relatively stable for nearly thirty years. Then in 2018, the DOL published an opinion letter which removed the 20% threshold. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-27 (Nov. 8, 2018), 2018 WL 5921455, at *3. The 2018 DOL Letter asserts that because the 20% rule has historically caused "confusion," the DOL eliminated any limitation on "the amount of duties related to tip-producing occupation that may be performed" so long as the employee performs the related duties

8

"contemporaneously" or "a reasonable time immediately before or after . . . direct-service duties." *Id.* at 2–3.[3]

Plaintiffs vigorously object to the Court's granting the 2018 DOL Letter any weight, contending that the 2018 DOL Letter represents an agency interpretation that runs contrary to the FLSA. The Court agrees.

An agency has "significant leeway to say what its own rules mean." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019). Thus, when an agency interprets its own ambiguous regulation, courts typically grant such interpretation "*Auer* deference." *Id.* at 2414–18. Under *Auer* deference, courts follow the agency's interpretation unless the interpretation is "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989)). A new agency interpretation that amounts to an about-face on its previous, longstanding position also may not be subject to *Auer* deference where the new interpretation creates "unfair surprise" in that it conflicts with the prior agency interpretation. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012); *see also Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170–71 (2007). In this circumstance, the Court has "rarely given *Auer* deference to an agency construction conflicting with a prior one." *Kisor*, 139 S. Ct. at 2418 (internal quotation marks omitted).

Where *Auer* deference is not appropriate, courts accord agency interpretations "*Skidmore* deference." *See Romero v Barr*, 937 F.3d 282, 297 (4th Cir. 2019) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). *Skidmore* deference instructs courts to accept an interpretation if the

---

[3] The DOL eventually updated its Handbook to reflect the same changes. *See* U.S. Dep't of Labor, Field Operations Handbook, § 30d00(f)(1)–(5) (Feb. 15, 2019). At the same time, the DOL also released a "Field Assistance Bulletin" that restates the substance of the opinion letter and instructs that this new interpretation applies to investigations and enforcement actions. U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2019-2 (Feb. 15, 2019).

agency supports it with reasoning that has "the power to persuade." *Sierra Club v. U.S. Army Corp. of Engineers*, 909 F.3d 635, 643–44 (4th Cir. 2018) (internal quotation marks omitted). Persuasiveness of the agency reasoning depends on "the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 644–45 (internal brackets omitted) (quoting *Skidmore*, 323 U.S. at 140). Where the agency provides no such reasoning, courts should give agency interpretations "no deference at all." *Id.* at 643–44. With these standards in mind, the Court turns to the 2018 DOL letter.

The Court cannot accord the 2018 DOL Letter *Auer* deference for two primary reasons. First, the Letter directly contradicts the 20% guideline set over three decades ago. Prior to the Letter, employees knew that the tip credit applied where tipped work represented 80% of their hours employed. The 2018 DOL Letter erases that longstanding benchmark without forewarning, *see Kisor*, 139 S. Ct. at 2418, and thus constitutes unfair surprise.

Second, the 2018 DOL Letter is plainly contrary to the relevant regulation interpreting "related duties." The regulation describes "related duties" as work performed "occasionally" and "part of [the] time." 29 C.F.R. § 531.56(e). The DOL intended, therefore, to impose some limitations on "related duties" in terms of the amount of time an employee spends performing such duties, and thus, for which employers could take advantage of the tip credit even though employees were performing untipped work. *Marsh*, 905 F.3d at 628–29; *Fast*, 638 F.3d at 879–80. That the DOL imposed some limitations on "related duties" is also consistent with the remedial purpose of the FLSA. The FLSA, at bottom, ensures a fair minimum wage. Employers may take advantage of the tip credit only where employees earn sufficient tips to subsidize the wage. If, as the 2018 DOL Letter states, no quantitative limits exist on an employer's imposition

of "related" but untipped duties, then employees could be deprived of the regular minimum wage even if only a fraction of the employee duties were tipped. This interpretation of the regulation flatly contradicts the purpose of the FLSA and thus cannot stand. *See Auer*, 519 U.S. at 461–62. Because the 2018 DOL Letter is "inconsistent with the regulation," the Court cannot accord it *Auer* deference. *Id.* at 461.

The 2018 DOL Letter similarly fails under *Skidmore* deference. First, the Court finds that the Letter rests on faulty reasoning. Although the Letter contends that the 20% guideline has been abandoned because of difficulties in administration, it fails to explain why the former bright-line rule is hopelessly confusing. Opinion Letter FLSA2018-27, 2018 WL 5921455, at *2–3. Instead, the 2018 DOL Letter inserts new uncertainty and ambiguity into the analysis: "no limitation shall be placed on the amount of these duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties." *Id.* The 2018 DOL Letter fails to explain how long a "reasonable time" would be, or what is meant by performing non-tipped work "contemporaneously" with tipped work. Accordingly, although the DOL professes to eliminate confusion with the 2018 Letter, it does quite the opposite.

Second, the Court finds the DOL to have overstated the degree of "confusion" engendered by the DOL Handbook's 20% guideline. The 2018 DOL Letter noted an apparent disagreement among courts in whether to accord the 20% guideline any weight. The DOL explained that the Southern District of Florida's decision in *Pellon v. Bus Representation International, Inc.*, 528 F. Supp. 2d 1313 (S.D. Fla. 2007) *aff'd* 291 F. App'x 310 (11th Cir. 2008), "rejected" the 20% threshold finding it confusing and unworkable. However, contrary to

the DOL's recitation, *Pellon* never squarely rejected the 20% guideline and instead sidestepped the question by finding it "unnecessary" to reach the validity of the 20% guideline on the particular facts of that case. *Pellon*, 528 F. Supp. 2d at 1313–14; *accord Vasquez v. MC Miami Enters., LLC*, No. 1:19-cv-22459, 2019 WL 4855740, at *3 n.5 (S.D. Fla. Sept. 12, 2019). Thus, while *Pellon* may have criticized the 20% threshold as fraught with difficulty in implementation, the court did not reach whether to accord it deference. *See Pellon*, 528 F. Supp. at 1314. This Court finds it difficult to consider the DOL "persuasive" when it distorts the import of the judicial determinations on which it relies.

Even more unsettling, when the DOL Letter was issued, a vast majority of courts had already adopted the 20% rule without difficulty.[4] Thus, where the DOL Letter announces confusion, this Court sees consensus.

For these reasons, this Court joins its sister courts in declining to accord the DOL Letter any persuasive value. *See Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2019 WL 3829459, at *14–16 (E.D. Pa. Aug. 15. 2019); *Spencer v. Macado's, Inc.*, — F. Supp. 3d —, No. 6:18-cv-00005, 2019 WL 2931304, at *5–6; *Ersy v. P.F. Chang's China Bistro, Inc.*, 373 F.

---

[4] *Marsh*, 905 F.3d at 628–32; *Fast*, 638 F.3d at 879–81; *Driver*, 739 F.3d at 1076; *Spencer v. Macado's, Inc.*, 6:18-cv-00005, 2018 WL 3676990, at *7–8 (W.D. Va. Aug. 1, 2018); *Nelson v. Firebirds of Overland Park, LLC*, No. 17-2237-JWL, 2018 WL 3023195, at *4 (D. Kan. June 18, 2018); *Alverson v. BL Rests. Operations LLC*, 5-16-CV-00849-OLG-RBF, 2018 WL 1618341, at *3 (W.D. Tex. Apr. 3, 2018); *Brown v. Metro Corral Partners, LLC*, 1:17-cv-1054-TCB-WEJ, 2018 WL 7079994, at *3–4 (N.D. Ga. Mar. 8, 2018); *Harrison v. Rockne's Inc.*, 274 F. Supp. 3d 706, 713 (N.D. Ohio 2017); *Romero v. Top-Tier Colo. LLC*, 274 F. Supp. 3d 1200, 1206–07 (D. Colo. 2017); *Goodson v. OS Rest. Servs., LLC*, 5:17-cv-10-Oc-37PRL, 2017 WL 1957079, at *6 (M.D. Fla. May 11, 2017); *White v. NIF Corp.*, No. 15-322-WS-N, 2017 WL 210243, at *4 (S.D. Ala. Jan. 18, 2017); *Barnhart*, 2017 WL 1196580, at *5–6; *Langlands v. JK & T Wings, Inc.*, No. 15-13551, 2016 WL 4073548, at *3 (E.D. Mich. Aug. 1, 2016); *McLamb v. High 5 Hosp.*, 197 F. Supp. 3d 656, 661–63 (D. Del. 2016); *Irvine v. Destination Wild Dunes Mgmt, Inc.*, 106 F. Supp. 3d 729, 733–35 (D.S.C. 2015); *Flood v. Carlson Rests., Inc.*, 94 F. Supp. 3d 572, 583 (S.D.N.Y. 2015) ("[C]ourts in the Southern District of New York have consistently endorsed the twenty percent rule."); *Hart v. Crab Addison, Inc.*, No. 13-cv-6458 CJS, 2014 WL 5465480, at *5–6 (W.D.N.Y. Oct. 28, 2014); *Plewinsky v. Luby's, Inc.*, No. H-07-3529, 2010 WL 1610121, at *5 (S.D. Tex. Apr. 21, 2010); *Ash v. Sambodromo, LLC*, 676 F. Supp. 2d 1360, 1367–68 (S.D. Fla. 2009); *but see Chavez v. T & B Mgmt.*, 1:16cv1019, 2017 WL 2275013, at *9, *11 (M.D.N.C. May 24, 2017).

Supp. 3d 1205, 1209–11 (E.D. Ark. 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976, 986 (W.D. Mo. 2019); *see also Callaway v. DenOne LCC*, No. 1:18-cv-1981, 2019 WL 1090346, at *5–7 (N.D. Ohio Mar. 8, 2019) (not resolving whether the new interpretation merits deference but expressing reluctance to apply *Auer*); *but see Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CA-1193-FB, 2019 WL 2098116, at *1 (W.D. Tex. Apr. 24, 2019).

Although the Court cannot accord the DOL letter the deference that HMS Host urges, even if it did, dismissal would nonetheless not be warranted. The Complaint contends that HMS Host systematically required tipped employees to perform untipped work regularly so that it could meet unrealistic labor budgets. *Storch*, ECF No. 1 at ¶ 15. Plaintiffs further aver that they performed one to three hours per shift of such untipped work and describe a wide variety of tasks performed. *Id.* at ¶ 23. Viewing the allegations as true and most favorably to Plaintiffs, one plausible inference is that Plaintiffs had to perform this work not "contemporaneous" with tipped work or for a "reasonable time immediately before or after" tipped work. For example, duties such as vacuuming and cleaning the booths and chairs immediately before closing plausibly could occur after customers have left (or otherwise the work itself would interfere with customers enjoyment of their meals or beverages) and could have lasted long enough to be considered an "*un*reasonable time" past shift hours. *See id.* at ¶ 41. Accordingly, even under the DOL's new standard, the Complaint's allegations are sufficient to survive challenge. HMS Host's motion to dismiss is denied.

**IV.  Conclusion**

For the foregoing reasons, HMS Host's motions to dismiss in the cases of *Flores v. HMS Host Corp.*, No 8:18-cv-03312-PX, and *Storch v. HMS Host Corp.*, No. 8:18-cv-03322-PX are denied. A separate Order follows.

10/23/2019
Date

/s/
Paula Xinis
United States District Judge